BRYAN BURNS *v.* HARTFORD HOSPITAL ET AL.
(11064)

SPEZIALE, C. J., HEALEY, PARSKEY, SHEA and SPONZO, Js.

Argued October 13, 1983—decision released March 13, 1984

*David W. Skolnick,* with whom were *Andrew R. Lubin* and, on the brief, *Ivan M. Katz,* for the appellant (plaintiff).

*James M. Tanski,* with whom were *Lois B. Tanzer* and, on the brief, *M. Katherine Glassman,* law student intern, for the appellee (named defendant).

SPEZIALE, C. J. This is an appeal from the trial court's order granting summary judgment for the defendants, Hartford Hospital and Dr. Ronald W. Cooke, on the ground that there was no genuine issue of material fact that the plaintiff's suit was barred by the statute of limitations, General Statutes § 52-584.

Because we find that material facts concerning the statute of limitations were not in dispute, we find no error.

On November 1, 1978, Bryan Burns, a minor, by his mother and next friend Barbara Burns, filed suit against Hartford Hospital and Ronald W. Cooke, M.D. The complaint alleged that the defendants' malpractice had caused permanent injury to Bryan's leg; the plaintiff requested commensurate damages. Through pleadings and the deposition[1] of Barbara Burns the plaintiff alleged the following facts: On October 23, 1975, Bryan, who was then two years old, was admitted to Hartford Hospital for treatment of injuries suffered in an automobile accident. His injuries were confined to the upper body and torso. During the course of his treatment Bryan's condition required that he be administered fluids intravenously. To accomplish this, hospital personnel made "cut downs" in his lower legs, through which intravenous tubes were inserted. Bryan remained in Hartford Hospital, confined to bed, throughout the treatment process.

About a week after he first entered the hospital, and while his original injuries were responding well to treatment, Bryan began to display symptoms of soreness in his left leg between the knee and the ankle, near the intravenous "cut down." The leg was visibly swollen and showed redness. Barbara Burns became aware of Bryan's pain when he refused to let her touch the leg. Bryan's physician, Dr. Cooke, initially diagnosed the problem as a hematoma. Shortly thereafter, however, the leg developed an abscess. About November 10, 1975, Dr. Cooke lanced the abscessed area and removed thirty to forty cubic centimeters of purulent fluid. After analyzing the fluid Dr. Cooke changed his diagnosis and

---

[1] Barbara Burns was deposed by counsel for both defendants on November 5, 1979. The transcript of that deposition was part of the record before the trial court when it acted on the motions for summary judgment and is part of the record on appeal as well.

determined that Bryan had suffered a streptococcus infection. He told Barbara Burns that the infection had probably reached the muscle and had possibly reached the bone as well. He ascribed blame for the infection to the use of contaminated intravenous tubes. After lancing Bryan's leg Dr. Cooke prescribed antibiotics to treat the infection.

Bryan was released from the hospital on November 16, 1975, but did not begin to walk again for at least a month. Bryan saw Dr. Cooke three times within a month of his release from the hospital for further treatment. On the last visit Dr. Cooke told Barbara Burns that Bryan's leg would heal fully with time; he scheduled no further appointments. From the time Bryan again began to walk Barbara Burns noticed that his gait was irregular, but she took no further medical or legal action in reliance on Dr. Cooke's prognostication of complete recovery.

During the following year and one-half Bryan's gait grew progressively worse and Barbara Burns noticed that the big toe of his left foot was growing improperly and the muscles in his left calf were not developing. In August, 1977, Barbara Burns took Bryan to another physician. After a series of visits to this physician and others, it was discovered that Bryan's disability was caused by a buildup of scar tissue in the calf which was suppressing proper muscle development.

On November 1, 1978, Bryan Burns filed suit alleging that Hartford Hospital and Dr. Cooke acted negligently in failing to diagnose accurately and treat properly the infection in Bryan's leg. On May 22, 1981, Dr. Cooke filed a motion for summary judgment on the ground that the applicable statute of limitations, General Statutes § 52-584,[2] barred the plaintiff's suit. Hart-

___

[2] "[General Statutes] Sec. 52-584. LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the per-

ford Hospital also filed a similar motion. On October 2, 1981, the trial court rendered judgment granting both defendants' motions for summary judgment after concluding that there was no issue of material fact in dispute concerning when Barbara Burns, Bryan's mother and next friend, was first aware of Bryan's injury. It found that she had discovered the injury on November 10, 1975, when Dr. Cooke diagnosed Bryan's ailment as an infection caused by contaminated intravenous tubes. The trial court then looked to the statute of limitations for malpractice actions, § 52-584, which provides in relevant part that any such suit "shall be brought . . . within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered." The trial court then determined that because Bryan's injury occurred in November, 1975, and because Barbara Burns became aware of the injury on November 10, 1975, the statute of limitations barred any suit for damages arising from that injury brought more than two years later. Accordingly, the court granted both defendants' motions for summary judgment. The plaintiff appealed from the judgment for Hartford Hospital and Dr. Cooke; the only question before us, however, is whether the trial court erred in granting summary judgment in favor of Hartford Hospital.[3] We find no error.

son, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[3] The appeal involving Dr. Ronald Cooke has since been dismissed because of a deficiency in the plaintiff's recognizance.

"A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Yanow* v. *Teal Industries, Inc.,* 178 Conn. 262, 268, 422 A.2d 311 (1979); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 377–78, 260 A.2d 596 (1969)." *Bartha* v. *Waterbury House Wrecking Co.,* 190 Conn. 8, 11, 459 A.2d 115 (1983). See *Herman* v. *Endriss,* 187 Conn. 374, 446 A.2d 9 (1982). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. *Bartha* v. *Waterbury House Wrecking Co.,* supra, 11–12; *Farrell* v. *Farrell,* 182 Conn. 34, 38, 438 A.2d 415 (1980); *Rusco Industries, Inc.* v. *Hartford Housing Authority,* 168 Conn. 1, 5, 357 A.2d 484 (1975). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." *Bartha* v. *Waterbury House Wrecking Co.,* supra, 12. "The movant has the burden of showing the non-existence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." *Kasowitz* v. *Mutual Construction Co.,* 154 Conn. 607, 613, 228 A.2d 149 (1967), quoting *Boyce* v. *Merchants Fire Ins. Co.,* 204 F. Sup. 311, 314 (D. Conn. 1962); see *Farrell* v. *Farrell,* supra, 39; *Plouffe* v. *New York, N.H. & H. R. Co.,* 160 Conn. 482, 490, 280 A.2d 359 (1971); *Hartmann* v. *Smith,* 158 Conn. 613, 614, 259 A.2d 645 (1969).

Here, the defendant Hartford Hospital supported its motion for summary judgment with excerpts from a sworn deposition of Barbara Burns, given on November 5, 1979. It claimed that her deposition showed clearly that Barbara Burns had discovered Bryan's injury more than two years before instituting suit and that, because that issue was not in dispute, the court should find the suit barred by the statute of limitations and award summary judgment for Hartford Hospital. The plaintiff filed a counter-affidavit in opposition claiming that Barbara Burns had not discovered Bryan's injury until August 1, 1977. Thus, the dispositive issue on appeal is whether Barbara Burns's deposition demonstrates that there is no genuine issue of material fact in dispute as to when she discovered Bryan's injury.

In her deposition Barbara Burns stated that she first noticed the swelling and discoloration in Bryan's leg about November 10, 1975. By about November 10, 1975, she became fully aware not only of Bryan's injury but also of its cause. She testified in her deposition that on or about November 10, Dr. Cooke told her that the leg was infected and that the infection was caused by contaminated intravenous tubes that hospital staff had placed in the leg:

"Q. [Attorney for Dr. Cooke] When was Bryan's leg lanced?

"A. [Barbara Burns] Around the 10th, I believe it was.

"Q. Around November 10?

"A. Yes.

"Q. And were you at the hospital that day?

"A. Yes.

"Q. Did you talk to Dr. Cooke that day, that you recall?

"A. After the lancing?

"Q. Either before or after.

"A. After the lancing.

"Q. So, what did he say to you?

"A. That he found infection in the leg and that there was muscle infection and possible bone infection.

"Q. And this was November 10?

"A. Yes.

\* \* \*

"Q. [Attorney for Hartford Hospital] Now, around the 10th or so of November, you were informed of this change that now it was thought that it was an infection rather than a hematoma and that Dr. Cooke was going to lance it or had lanced it already?

"A. [Barbara Burns] Yes.

"Q. Now, at that time, did you ever ask Dr. Cooke how the infection came about?

"A. Yes.

"Q. And what did Dr. Cooke tell you?

"A. He told us it was a streptococcus infection and that it probably became infected from the intravenous tubes.

"Q. And when did he tell you that?

"A. The day he lanced it.

"Q. That was November 10, 1975?

"A. Yes."

At a later point in the deposition Barbara Burns testified that it was not until a year and a half later that she was first informed "that there was, in fact, muscle or tendon damage in that leg." In the face of her own overwhelming testimonial evidence to the contrary, however, Barbara Burn's unsupported averments that she did not know of the injury in November, 1975 cannot be construed as placing the issue in doubt.

The plaintiff did not file suit until November 1, 1978. Because the trial court properly ruled that the plaintiff, by his mother and next friend, discovered the injury in November, 1975, the only remaining question is whether the court was correct in holding that a delay

of nearly three years in this medical malpractice action exceeded the statute of limitations.[4]

Section 52-584 of the General Statutes provides in relevant part that all actions to recover damages caused by malpractice against a hospital must be brought "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered." Barbara Burns's deposition clearly establishes that she was aware of Bryan's injury in November, 1975. Allegedly, she delayed bringing suit against Hartford Hospital because she relied on Dr. Cooke's prognosis of complete recovery from the infection. In her deposition she testified:

"Q. [Attorney for Hartford Hospital] You said Dr. Cooke had led you to believe that it was going to resolve itself with time? When was this?

"A. [Barbara Burns] On the office visit after he was released from the hospital.

"Q. He pretty much told you this was something that was going to go away?

---

[4] The trial court implicitly ruled that Barbara Burn's knowledge that Bryan had suffered an actionable injury is imputed to Bryan in his status as a plaintiff. The plaintiff has not challenged that ruling on appeal by including it in his statement of issues or by discussing it in his brief. Because this court raised that issue at oral argument, however, we briefly note that in Connecticut the statute of limitations applies with full force against the claims of infants. *Lametta* v. *Connecticut Light & Power Co.*, 139 Conn. 218, 92 A.2d 731 (1952). " 'It is well settled that a statute of limitations runs against the claims of infants in the absence of a contrary statutory provision.' *Lane* v. *Travelers Ins. Co.*, 230 Iowa 973, 977, 299 N.W. 553 [1941]." *Lametta* v. *Connecticut Light & Power Co.*, supra, 223; see 51 Am. Jur. 2d, Limitation of Actions § 182. Obviously, an infant such as Bryan Burns, unlike an adult, cannot be presumed to know that legal redress is available for an injury caused by the negligence of another. Thus, in order to effectuate this legislative policy in cases dealing with that portion of the statute of limitations that requires an action to be commenced within two years of the time the injury is first discovered or should have been discovered, the knowledge of a parent or guardian that his or her child has suffered an actionable injury must be imputed to that child.

"A. With time it would heal. He didn't ask to see us again or anything.

\* \* \*

"A. [Barbara Burns] He told me the muscle was infected the day that he had lanced it. He did not say it would be permanent.

"Q. [Attorney for Bryan Burns] Did he indicate to you, in any way, imply in any way to you that there would be any permanent injury with respect to that leg?

"A. No.

"Q. When was it that you were first informed and by whom, that there was, in fact, muscle or tendon damage in that leg?

"A. When I brought him to Dr. Sweet.

"Q. And when was that?

"A. About a year and a half later."

Dr. Cooke's alleged misdiagnosis, however, did not toll the statute of limitations as it applied to Hartford Hospital. The injury that the plaintiff attributes to the hospital's negligence, i.e., the streptococcus infection, was inflicted and discovered in November, 1975. At that point the hospital's alleged breach of duty was complete. The plaintiff has not alleged that the hospital staff in any way concealed the extent of the injury or misled her about its cause. The act of an independent intervening third party,[5] who may have misled the plaintiff about the injury's seriousness or even compounded the harm by failing to render effective treatment, cannot extend the hospital's liability beyond the statutory limitation period.

---

[5] The plaintiff has not alleged, nor does the record indicate, that Dr. Cooke was acting as Hartford Hospital's agent. In her deposition Barbara Burns testified that Dr. Cooke had treated Bryan for a different ailment in 1974 and that it was she, not the hospital, who summoned Dr. Cooke to the hospital to examine Bryan on this occasion.

The statute requires that the injured party bring suit within two years of discovering the injury. General Statutes § 52-584. In this context an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run. Because the plaintiff did not bring suit within two years of discovering the injury, the trial court correctly ruled that the action was barred by the statute of limitations.

Unfortunately, the unavoidable result we reach in this case is harsh. The plaintiff may very well be foreclosed from any remedy for what might have been an actionable injury. But it is within the General Assembly's constitutional authority to decide when claims for injury are to be brought. See *McDonald* v. *Haynes Medical Laboratory, Inc.,* 192 Conn. 327, 335, 471 A.2d 646 (1984) (*Speziale, C. J.,* concurring). Toward that end the General Assembly has mandated, through § 52-584, that one must assert a cause of action for medical malpractice within two years of the time the injury is discovered. Where a plaintiff has failed to comply with this requirement, a court may not entertain the suit.

There is no error.

In this opinion the other judges concurred.